879 So.2d 195 (2004)
Sylvia B. WASHAUER
v.
J.C. PENNEY COMPANY, INC. and Liberty Mutual Insurance Company.
No. 2003 CA 0642.
Court of Appeal of Louisiana, First Circuit.
April 21, 2004.
*196 Jack M. Dampf, Gregory P. Aycock, Dampf, Thibaut & Melanson, L.L.P., Baton Rouge, for Plaintiff-Appellant Sylvia B. Washauer.
Charles M. Ponder, III, Lozes, Cambre & Ponder, New Orleans, Kenner O. Miller, Jr., Sweeney & Miller, L.L.C., Baton Rouge, for Defendants-Appellants J.C. Penney Company, Inc. and Liberty Mutual Ins. Co.
Before: CARTER, C.J., PARRO, and GUIDRY, JJ.
PARRO, J.
Sylvia B. Washauer appeals a judgment dismissing her personal injury claims against J.C. Penney Company, Inc. (Penney's) and its insurer, Liberty Mutual Insurance Co. (Liberty Mutual), on a motion for summary judgment. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
After shopping with a friend at Cortana Mall in Baton Rouge, Washauer walked *197 through Penney's store toward the exit to the parking lot and tripped on a floor mat in front of the door. She fell against the glass door, injuring her arm, shoulder, knees, and hip, and breaking her watch, ring, and glasses. Washauer sued Penney's and Liberty Mutual, seeking damages for her injuries. They filed a motion for summary judgment, alleging Washauer could not meet her burden of proof on the elements of her cause of action, as set forth in Louisiana Revised Statute 9:2800.6(B). Their motion was supported by affidavits from Richard Guidry, who witnessed the accident, and Edward Savold, the store manager; the depositions of Washauer and her friend, Peggy Blumberg, who also witnessed her fall; and various photographs attached to the depositions. Washauer opposed the motion, submitting her deposition and that of William Charles Folks, whom she proposed as an expert. After a hearing at which the trial court determined there was no need for expert testimony in this type of accident, the motion was granted, dismissing her claims. Washauer appeals this judgment.

APPLICABLE LAW

Summary Judgment
Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B); Collins v. Randall, 02-0209 (La. App. 1st Cir.12/20/02), 836 So.2d 352, 354. In determining whether summary judgment is appropriate, appellate courts conduct a de novo review of the evidence, employing the same criteria that govern the district court's determination of whether summary judgment is appropriate. Sanders v. Ashland Oil, Inc., 96-1751 (La. App. 1st Cir.6/20/97), 696 So.2d 1031, 1035, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29.
The initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party's burden of proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the nonmoving party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Duplantis v. Dillard's Dep't Store, 02-0852 (La. App. 1st Cir.5/9/03), 849 So.2d 675, 679-80, writ denied, 03-1620 (La.10/10/03), 855 So.2d 350.

Merchant's Liability
The applicable substantive law in this case is set out in Louisiana Revised Statute 9:2800.6, which states, in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other *198 elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care.....
C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care.

ANALYSIS
Washauer claims she fell over the "curled up" edge of a floor mat that was not properly affixed or secured to the floor. In this appeal, Washauer maintains the trial court erred in holding that the unfastened floor mat did not, in and of itself, create an unreasonable risk of harm. She further claims the trial court erred in finding that she could not show Penney's had actual or constructive notice of the hazardous condition of the floor mat. Finally, she contends the exclusion of her expert's testimony was error.

Expert Testimony
Addressing the last contention first, we note that admission of expert testimony is governed by Louisiana Code of Evidence article 702, which states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
In determining whether to admit expert testimony, the court is guided by two primary concerns: whether the witness plans to testify to actual technical knowledge and whether such knowledge will assist the trier of fact in understanding. Pelts & Skins Export, Ltd. v. State ex rel. Dep't of Wildlife and Fisheries, 97-2300 (La.App. 1st Cir.4/1/99), 735 So.2d 116, 121, writs denied, 99-2036 & 2042 (La.10/29/99), 748 So.2d 1167 & 1168. Trial courts have great discretion in determining the qualifications of experts and the effect and weight to be given expert testimony. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 & 1545 (La.App. 1st Cir.3/11/94), 634 So.2d 466, 477, writ denied, 94-0906 (La.6/17/94), 638 So.2d 1094. The appellate court, absent a clear abuse of the trial court's discretion, will not disturb this determination. Maxwell v. State, Through Dep't of Transp. & Dev., 391 So.2d 1230, 1233 (La.App. 1st Cir.), writ denied, 394 So.2d 281 (La.1980).
Washauer claims the court erred in not considering Folks' opinions, since the case involves technical aspects of the type of floor mat, the composition of the mat material, and the standard of care applicable to securing a floor mat to the floor. However, this court has reviewed Folks' deposition and finds no abuse of discretion in the trial court's decision that his knowledge would not help it to understand the evidence. Folks described his areas of expertise as carpet cleaning, carpet repair, fire and water restoration, construction, and cleaning, none of which are involved in this case. Folks said he had learned from cleaning commercial floor mats how to keep them from moving around on the floor. Folks claimed no safety expertise and said he did not know of any building or safety codes that might impact the *199 placement or securing of floor mats in a retail store. He had not surveyed similar commercial establishments to determine the type of mats most commonly used, the methods of securing such mats to the floor, or whether other businesses generally did affix such mats to the floor. Folks viewed the exit where the accident occurred for about thirty minutes and observed the mat in use during that period only. He offered no support for his "guesstimate" that thousands of people traversed that mat each day and did not scientifically test the "slipperiness" of the floor or the adhesion characteristics of the mat to the floor. We conclude that Folks' opinions concerning the floor mat were not based on superior knowledge or experience, and we cannot fault the trial court for concluding that his testimony would not be helpful to it. The trial court did not abuse its discretion in disallowing his "expert" opinion in this case.

Essential Elements of Washauer's Case
Washauer has the burden of proving that the floor mat where she tripped presented an unreasonable risk of harm to her, that the risk of harm was reasonably foreseeable, that Penney's either created or had actual or constructive notice of the condition prior to the occurrence, and that Penney's failed to exercise reasonable care to eliminate the condition. She contends the floor mat itself presented an unreasonable risk of harm, because it was not properly secured to the floor to prevent it from sliding, moving, or buckling. She also claims Penney's created this condition by not fastening the mat to the floor, and therefore, she does not have to show actual or constructive notice. In the alternative, she contends that the tendency of the floor mat to buckle, move, and curl during normal use was apparent, that the danger of tripping was reasonably foreseeable, and therefore, Penney's should be charged with constructive notice that this floor mat constituted a hazardous condition needing correction.
Savold's affidavit stated that the floor mat where Washauer tripped was similar to those placed at all entrances to the Penney's store, that this same type of mat had been used at this store location for ten years, and that during the preceding year, he found no record of any other incident involving one of these floor mats. These facts demonstrate that the unsecured floor mat was not unreasonably dangerous in normal use. A floor mat does not present a tripping hazard until or unless it is moved from its flat position on the floor. Therefore, in and of itself, the flat floor mat, even though unsecured, was not a dangerous condition. Washauer's evidence in opposition to the motion for summary judgment did not show that she would be able to satisfy her evidentiary burden of proof at trial that the unfastened floor mat was, in and of itself, a condition presenting an unreasonable risk of harm to her.
The only other possible basis for Washauer's claim is that the condition of the mat at the time she approached it was unreasonably hazardous; in that case, she would have to show that Penney's either created the condition or had actual or constructive knowledge of the condition. Blumberg said in her deposition that as Washauer approached the door, she noticed that about a foot of the mat corner was "flipped up"; she did not have time to warn her friend before she fell. Blumberg had not seen this condition when they entered and did not recall seeing it any other time during this or any other shopping trip. Washauer said she had shopped at the Penney's store on many occasions and had never tripped at the entry or on any other floor mats there or at any other store. She said she had "walked over it a million times" and did not notice the floor *200 mat before she fell. Nothing blocked her ability to see the floor mat as she approached it. Washauer stated, "I don't know what happened. All of a sudden I felt myself falling across that area. Meaning that I fell into the two glass doors." Guidry, who saw Washauer fall as he and his wife entered, stated the floor mat was flipped up after she fell, but not before. Neither Washauer nor Blumberg could estimate how long the corner of the floor mat had been turned over or how it came to be in that condition.
Moreover, Blumberg's testimony indicates that the "flipped-up" condition of the floor mat was clearly visible as Washauer approached. The degree to which a danger is evident to a potential victim is one factor in determining whether the condition is unreasonably dangerous. Shavers v. City of Baton Rouge/Parish of East Baton Rouge, 00-1682 (La.App. 1st Cir.9/28/01), 807 So.2d 883, 886, writ denied, 01-2848 (La.1/4/02), 805 So.2d 207. If a dangerous condition is patently obvious and easily avoidable, it cannot be considered to present a condition creating an unreasonable risk of harm. Alexander v. City of Baton Rouge, 98-1293 (La.App. 1st Cir.6/25/99), 739 So.2d 262, 268, writ denied, 99-2205 (La.11/5/99), 750 So.2d 188.
After conducting a de novo review of all the evidence submitted in support of and in opposition to the motion, we conclude that Penney's and Liberty Mutual showed there was an absence of support for several essential elements of Washauer's case, namely that the unfastened floor mat was unreasonably dangerous in and of itself or that its "flipped over" condition that caused her to fall had existed for such a period of time that it would have been discovered if Penney's had exercised reasonable care. Washauer's evidence failed to establish that she would be able to satisfy her evidentiary burden of proof on these elements at trial. Therefore, summary judgment in favor of Penney's and Liberty Mutual was appropriate.

CONCLUSION
The judgment of the trial court, granting Penney's and Liberty Mutual's motion for summary judgment and dismissing Washauer's claims, is affirmed. All costs of this appeal are assessed to Washauer.
AFFIRMED.